UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| D B Industries, LLC, d/b/a Capital Safety USA,<br><br>      Plaintiff,<br><br>v.<br><br>GF Protection, Inc., d/b/a Guardian Fall Protection,<br><br>      Defendant. | Case No. _____<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

D B Industries, LLC, d/b/a Capital Safety USA ("Capital Safety"), for its Complaint against Defendant GF Protection, Inc. d/b/a Guardian Fall Protection ("Guardian"), states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; for federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44; and for unfair competition under the common law of the State of Minnesota.

## PARTIES

2. Capital Safety is a Minnesota limited liability company having a principal place of business at 3833 Sala Way, Red Wing, Minnesota 55066.

3. Guardian is a Washington Corporation having a Registered Office address at 26609 79th Avenue South, Kent, Washington 98032.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims asserted in this action under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 because the claims involve a federal question, and under 28 U.S.C. § 1332 because the parties are diverse. This Court also has subject matter jurisdiction over the claims of federal trademark infringement and unfair competition under 28 U.S.C. § 1338(a) because the claims arise under an Act of Congress related to trademarks (sections 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1051, *et seq.*), and has subject matter jurisdiction over the claim of common law unfair competition in accordance with 28 U.S.C. § 1338(b). This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the claims arising under MINN. STAT § 325D.44, *et seq.*, MINN. STAT § 333.285, and Minnesota state common law.

5. This Court has personal jurisdiction over Guardian because Guardian has purposefully availed itself of the privilege of conducting business in this District. Specifically, Guardian offers and sells products bearing the infringing trademark in this District, and has created a distribution network to sell those products in this District. On information and belief, Guardian has intentionally distributed products bearing the infringing marks in this District, and Guardian's acts in creating a distribution chain extending to this District were aimed at the forum state of Minnesota. Guardian's acts in distributing products bearing the infringing marks in this District and in creating a

distribution chain extending to this District caused harm to Capital Safety, the brunt of which occurred in this District.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the conduct that forms the basis of the claims in this Complaint—the advertisement, promotion, and sales of products associated with the infringing trademark—occurred in whole or in part in this District.  Venue is also proper in this Court under 28 U.S.C. § 1391(b)(1) because Guardian has sufficient minimum contacts within the state, subjecting it to personal jurisdiction as a corporation that resides in this District under 28 U.S.C. § 1391(c)(2).

## FACTS

7. Capital Safety is a leading manufacturer and seller of fall protection safety equipment.

8. Capital Safety uses the mark NANO-LOK® for a range of its fall protection safety equipment, namely self-retracting lifelines.  Capital Safety spends a considerable amount of time and money promoting its NANO-LOK® mark.  The following photographs demonstrate how Capital Safety has used the NANO-LOK® mark in commerce:

  

9. On July 14, 2010, Capital Safety filed a federal trademark application for the NANO-LOK® mark in connection with "fall protection equipment for fall arrest and rescue, namely, self-retracting lifelines."

10. On May 29, 2012, the application for the NANO-LOK mark matured into a registration, and was assigned Registration No. 4,150,766. A copy of the Certificate of Registration is attached as **Exhibit 1**, showing Capital Safety as the record owner.

11. Capital Safety has used its NANO-LOK® mark in commerce in connection with fall protection safety equipment since at least as early as November 17, 2011. It also made nationwide constructive use of the mark in connection with the goods as of July 14, 2010, when it filed its federal trademark application for the mark.

12. Upon information and belief, Guardian also manufactures and sells fall protection safety equipment.

13. On July 24, 2013 Capital Safety sent Guardian a letter in which it objected to Guardian's use of the word "nano"—and in particular to the use of the phrase "the nano of retractables"—to promote, advertise, and sell a line of self-retracting lifelines (the "July 24 Correspondence"). A copy of the July 24 Correspondence is attached as **Exhibit 2**.

14. The July 24 Correspondence included a copy of U.S. Trademark Registration No. 4,150,766 for the NANO-LOK® mark.

15. After receiving the July 24 Correspondence, Guardian removed references to the phrase "the nano of retractables" from its website, www.guardianfall.com, and from its catalog. For example, page 60 of Guardian's 2012 Catalog contains this statement:

> The new Guardian Blow Blocker is an exciting addition to our line of retractables. ***The nano of retractables***, this 7 ft. retractable is extremely lightweight, fits nicely in your hand and offers the worker safe mobility when using a lanyard type product.

Guardian 2012 Catalog at 60 (emphasis added). A copy of page 60 of Guardian's 2012 Catalog is attached as **Exhibit 3** and was available online as of July 14, 2014, at: http://issuu.com/marccorbett/docs/2012_guardian_catalog. The same page of Guardian's 2013 Catalog, however, contains a substantially similar statement but without the "nano of retractables" phrase:

> The new Guardian Blow Blocker is an exciting addition to our line of retractables. This 6 ft. retractable is extremely lightweight, fits nicely in your hand and offers the worker safe mobility when using a lanyard type product.

Guardian 2013 Catalog at 60. A copy of page 60 of Guardian's 2013 Catalog is attached as **Exhibit 4** and was available online as of July 14, 2014, at: www.guardianfall.com/images/stories/product_catalog/2013_Guardian_Catalog.pdf. (Emphasis added.)

16. In or around January 2014, Guardian began promoting a new line of fall protection safety equipment using the mark NANOTECH. The following photographs demonstrate the NANOTECH mark and how Guardian is using the NANOTECH mark in commerce:

- 5 -



17. Upon information and belief, Guardian is using the mark NANOTECH as an unregistered common law trademark. For example, on its "Sell Sheet" for its "Nanotech barrier web harness," Guardian has added the "TM" next to the mark. A copy of the "Sell Sheet" is attached as **Exhibit 5** and was available online as of July 14, 2014, at: http://guardianfall.com/performance-safety-products/full-body-harnesses/nanotech-barrier-web-harnesses.

18. Upon information and belief, Guardian cannot claim a date of first use for its NANOTECH mark prior to January 1, 2014.

19. Capital Safety has constructive nationwide use of its NANO-LOK® mark since July 14, 2010, and it has actually used that mark in connection with self-retracting lifelines at least as early as November 2011.

20. Capital Safety's NANO-LOK® mark and Guardian's NANOTECH mark have the identical initial suggestive portion "NANO."

21. The remaining portions of Capital Safety's NANO-LOK® mark and Guardian's NANOTECH mark are monosyllabic terms, both ending in a hard "k" sound.

9791927v1

22. Below is a photograph of Guardian's NANOTECH mark next to Capital Safety's NANO-LOK® mark:



23. Guardian's fall protection safety equipment—including its body harnesses, lanyards, body straps, and anchors—is highly related to Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark.

24. Guardian's body harnesses, lanyards, body straps, and anchors are complementary to Capital Safety's self-retracting lifelines because body harnesses, lanyards, body straps, and anchors can be used in conjunction with self-retracting lifelines as a fall protection safety system.

25. Guardian and Capital Safety target the same classes of consumers.

26. Guardian markets its fall protection safety equipment under the NANOTECH mark in the same channels of trade used by Capital Safety to market its NANO-LOK® self-retracting lifelines.

27. Guardian's use of the NANOTECH mark on or in connection with its fall protection safety equipment is likely to cause confusion, mistake, or deception. Consumers have and are likely to continue to mistakenly believe that the fall protection safety equipment Guardian offers under the NANOTECH mark are sponsored, endorsed, or approved by Capital Safety, or are in some other way affiliated, connected, or associated with Capital Safety, all to the detriment of Capital Safety.

28. Without Capital Safety's permission, authorization, approval, or consent, and with actual knowledge of Capital Safety's prior rights in its NANO-LOK® mark, Guardian commenced use of the confusingly similar NANOTECH mark in connection with fall protection safety equipment.

## COUNT I

**(Trademark Infringement of a Registered Mark)**

**(Lanham Act § 32, 15 U.S.C. § 1114)**

29. Capital Safety restates and incorporates by reference the allegations in Paragraphs 1-28.

30. Guardian's use of the NANOTECH mark in connection with fall protection safety equipment is likely to cause confusion, cause mistake, and deceive as to whether Capital Safety is in some way affiliated, connected, or associated with Guardian or its fall protection safety equipment (or both).

31. Capital Safety's NANO-LOK® mark is inherently distinctive and therefore a strong mark.

9791927v1

32. Guardian's NANOTECH mark shares the same initial suggestive NANO element and a similar terminal syllable that ends in a hard "k" sound, making the NANOTECH and NANO-LOK® marks substantially similar in sight and sound.

33. Guardian's goods sold under the NANOTECH mark, namely body harnesses, anchors, lanyards, and body straps, may be used in conjunction with self-retracting lifelines and are therefore complementary and highly related to the self-retracting lifelines that Capital Safety sells under its NANO-LOK® mark.

34. Guardian's body harnesses, lanyards, anchors, and body straps marketed or sold under the NANOTECH mark are marketed through the same channels of trade as Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark.

35. Guardian's body harnesses, lanyards, anchors, and body straps marketed or sold under the NANOTECH mark are likely to target the same classes of consumers as Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark .

36. Capital Safety has priority over Guardian based on its earlier constructive and actual use of its NANO-LOK® mark in connection with fall protection safety equipment.

37. Guardian's use of the NANOTECH mark constitutes trademark infringement under 15 U.S.C. § 1114.

38. Guardian's unlawful actions have caused, and will continue to cause, Capital Safety irreparable harm unless enjoined.

39. Guardian has profited from its unlawful actions and has been unjustly enriched to the detriment of Capital Safety. Guardian's unlawful actions have caused Capital

Safety monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT II

### (Federal Unfair Competition)

### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

40. Capital Safety restates and incorporates by reference the allegations in Paragraphs 1-39.

41. Guardian's use of the NANOTECH mark in connection with fall protection safety equipment is a false designation of origin, false or misleading description of fact, and a false or misleading representation of fact.

42. Guardian's use of the NANOTECH mark in connection with fall protection safety equipment is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Guardian with Capital Safety, or as to the origin, sponsorship, or approval of Guardian's fall protection safety equipment by Capital Safety.

43. Capital Safety's NANO-LOK® mark is inherently distinctive and therefore a strong mark.

44. Guardian's NANOTECH mark shares the same initial suggestive NANO element and a similar terminal syllable that ends in a hard "k" sound, making the NANOTECH and NANO-LOK® marks substantially similar in sight and sound.

45. Guardian's goods sold under the NANOTECH mark, namely body harnesses, anchors, lanyards, and body straps, may be used in conjunction with self-retracting lifelines

and are therefore complementary and highly related to the self-retracting lifelines that Capital Safety sells under its NANO-LOK® mark.

46. Guardian's body harnesses, lanyards, anchors, and body straps marketed or sold under the NANOTECH mark are likely to be marketed through the same channels of trade as Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark.

47. Guardian's body harnesses, lanyards, anchors, and body straps marketed or sold under the NANOTECH mark are likely to target the same classes of consumers as Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark.

48. Capital Safety has priority over Guardian based on its earlier use of its NANO-LOK® mark in connection with fall protection safety equipment.

49. Guardian's use of the NANOTECH mark constitutes unfair competition under 15 U.S.C. § 1125(a)).

50. Guardian's unlawful actions have caused, and will continue to cause, Capital Safety irreparable harm unless enjoined.

51. Guardian has profited from its unlawful actions and has been unjustly enriched to the detriment of Capital Safety. Guardian's unlawful actions have caused Capital Safety monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## **COUNT III**

**(Minnesota Deceptive Trade Practices Act)**

**(MINN. STAT. § 325D.44,** *et seq.***)**

52.  Capital Safety restates and incorporates by reference the allegations in Paragraphs 1- 51.

53.  Guardian's use of the NANOTECH mark in connection with fall protection safety equipment is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Guardian with Capital Safety, or as to the origin, sponsorship, or approval of Guardian's fall protection safety equipment by Capital Safety.

54.  Capital Safety's NANO-LOK® mark is inherently distinctive and therefore a strong mark.

55.  Guardian's NANOTECH mark shares the same initial suggestive NANO element and a similar terminal syllable that ends in a hard "k" sound, making the NANOTECH and NANO-LOK® marks substantially similar in sight and sound.

56.  Guardian's goods sold under the NANOTECH mark, namely body harnesses, anchors, lanyards, and body straps, may be used in conjunction with self-retracting lifelines and are therefore complementary and highly related to the self-retracting lifelines that Capital Safety sells under its NANO-LOK® mark.

57.  Guardian's body harnesses, lanyards, anchors, and body straps marketed or sold under the NANOTECH mark are likely to be marketed through the same channels of trade as Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark.

9791927v1

58. Guardian's body harnesses, lanyards, anchors, and body straps marketed or sold under the NANOTECH mark are likely to target the same classes of consumers as Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark.

59. Capital Safety has priority over Guardian based on its earlier use of its NANO-LOK® mark in connection with fall protection safety equipment.

60. Guardian's use of the NANOTECH mark constitutes unfair and deceptive trade practices under Minnesota Statutes § 325D.44, *et seq.*

61. Guardian's unlawful actions have caused, and will continue to cause, Capital Safety irreparable harm unless enjoined.

62. Guardian has profited from its unlawful actions and has been unjustly enriched to the detriment of Capital Safety.  Guardian's unlawful actions have caused Capital Safety monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## **COUNT IV**

### **(Common Law Unfair Competition)**

63. Capital Safety restates and incorporates by reference the allegations in Paragraphs 1-62.

64. Guardian's use of the NANOTECH mark in connection with fall protection safety equipment is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Guardian with Capital Safety, or as to the origin, sponsorship, or approval of Guardian's fall protection safety equipment or commercial activities by Capital Safety.

- 13 -

65. Capital Safety's NANO-LOK® mark is inherently distinctive and therefore a strong mark.

66. Guardian's NANOTECH mark shares the same initial suggestive NANO element and a similar terminal syllable that ends in a hard "k" sound, making the NANOTECH and NANO-LOK® marks substantially similar in sight and sound.

67. Guardian's goods sold under the NANOTECH mark, namely body harnesses, anchors, lanyards, and body straps, may be used in conjunction with self-retracting lifelines and are therefore complementary and highly related to the self-retracting lifelines that Capital Safety sells under its NANO-LOK® mark.

68. Guardian's body harnesses, lanyards, anchors, and body straps marketed or sold under the NANOTECH mark are likely to be marketed through the same channels of trade as Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark.

69. Guardian's body harnesses, lanyards, anchors, and body straps marketed or sold under the NANOTECH mark are likely to target the same classes of consumers as Capital Safety's self-retracting lifelines sold under the NANO-LOK® mark.

70. Upon information and belief, Capital Safety has priority over Guardian based on its earlier use of its NANO-LOK® mark in connection with fall protection safety equipment.

71. Guardian's use of the NANOTECH mark constitutes common law unfair competition under Minnesota state law.

72. Guardian's unlawful actions have caused, and will continue to cause, Capital Safety irreparable harm unless enjoined.

73. Guardian has profited from its unlawful actions and has been unjustly enriched to the detriment of Capital Safety.  Guardian unlawful actions have caused Capital Safety monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Capital Safety prays that the Court enter judgment:

1. In favor of Capital Safety and against Guardian on all of Capital Safety's claims;

2. Preliminarily and permanently enjoining and restraining Guardian, its parent company, subsidiaries, affiliates, sister companies, officers, agents, servants, employees, attorneys, and all others in active concert or participation with Guardian from:

   A. Doing business under the name NANOTECH or any other confusingly similar name;

   B. Using the mark NANOTECH or any confusingly similar designation alone or in combination with other words or designs, as a trademark, trade name component or otherwise, to market, advertise, or identify goods and services not produced or authorized by Capital Safety;

   C. Unfairly competing with Capital Safety in any manner whatsoever;

   D. Causing likelihood of confusion with or injury to the business reputation of Capital Safety and its NANO-LOK® mark; and

   E. Committing any other acts that infringe Capital Safety's NANO-LOK® mark or constitutes an act of trademark or service mark infringement,

9791927v1

contributory infringement, or unfair competition under federal or Minnesota state law.

3. Requiring Guardian to deliver up, or cause to be delivered up, for destruction all labels, signs, prints, packages, tags, wrappers, receptacles, advertisements, and all other materials in Guardian's possession or control that infringe Capital Safety's NANO-LOK® mark;

4. Requiring Guardian to account for and pay over to Capital Safety the amount of Capital Safety's damages in accordance with 15 U.S.C. § 1117;

5. Requiring Guardian to account for and pay over to Capital Safety the amount of Guardian's profits in accordance with 15 U.S.C. § 1117;

6. Requiring Guardian to account for and pay over to Capital Safety the costs of this action in accordance with 15 U.S.C. § 1117;

7. Finding this case is exceptional and trebling any damage award in accordance with 15 U.S.C. § 1117;

8. Finding this case exceptional and requiring Guardian to pay over to Capital Safety its attorneys' fees incurred in connection with this case in accordance with 15 U.S.C. § 1117;

9. Requiring Guardian to account for and pay over to Capital Safety the amount of Capital Safety's damages, together with costs and disbursements, including costs of investigation and reasonable attorneys' fees in accordance with Minn. Stat. § 8.31, subd. 3a;

10. Requiring Guardian to pay Capital Safety pre-judgment interest, in accordance with Minn. Stat. §§ 549.09(b), (c)(2), accruing from the date of Capital Safety's written notice of its claim, at the legal rate of 10% per annum;

11. Requiring Guardian to pay Capital Safety post-judgment interest, in accordance with Minn. Stat. §§ 549.09(a), (c)(2), at the legal rate of 10% per annum from the date of entry of judgment until paid in full; and

12. Awarding Capital Safety such other relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Capital Safety hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

Date: September 3, 2014

**BOWMAN AND BROOKE LLP**

s/Steven L. Reitenour
Richard G. Morgan (#157053)
Timothy Mattson (#194517)
Steven L. Reitenour (#225691)
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Tel.: 612.339.8682
Fax.: 612.672.3200

***Attorneys for Plaintiff D B Industries, LLC, d/b/a Capital Safety USA***